IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

GARY SARTOR

CRIMINAL ACTION FILE NO.

1:16-CR-427-AT-JKL-4

## ORDER AND NON-FINAL REPORT AND RECOMMENDATION

This Order and Non-Final Report and Recommendation addresses the following pretrial motions filed by Defendant Gary Sartor:

–   Motion for Bill of Particulars [Doc. 493]

–   Motion for Full Disclosure of Cooperating Sources [Doc. 511]

–   Motion for Governmental Disclosure of Any Deals, Promises, or Inducements Involving Any Cooperating Source [Doc. 518]

–   Motion to Suppress Evidence Obtained by the Government from Social Media Accounts [Doc. 582]

For the following reasons, the Court **DENIES** the first three motions and **RECOMMENDS** that the motion to suppress be **DENIED**.

# I.    SUMMARY OF CHARGES AGAINST SARTOR

Sartor is charged in this case with the federal crimes of Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy (Count 1), one count of attempted Violent Crimes in Aid of Racketeering Activity ("VICAR") murder (Count 2), two counts of VICAR murder conspiracy (Counts 3 and 4), conspiracy to distribute controlled substances (Count 8), two counts of possession of marijuana and methamphetamine with intent to distribute (Counts 11 and 13), and one count of possession of methamphetamine with intent to distribute (Count 15).  [Doc. 33.] In Count 1, the superseding indictment alleges that Sartor was a member of the Nine Trey Gangsters, a street gang with members in New York, Georgia, and other southeastern states.  [*Id.* at 3-4, 14.]  The gang allegedly traces its origins to the United Blood Nation, a gang alliance that formed at Rikers Island in New York in the early 1990s that is also loosely affiliated with the Bloods gang of Los Angeles. [*Id.* at 3.]  The superseding indictment alleges that the Nine Trey Gangsters operated as a racketeering enterprise as defined by 18 U.S.C. § 1961(4).  [*Id.* at 12.]

The superseding indictment alleges that Sartor was involved in numerous Overt Acts in connection with the RICO conspiracy.  Specifically:

7. On or about February 13, 2016, defendants TYRONE CLARK, KHAJAVIUS MITCHELL, JOSEPH RILEY, Westly Shivers and JIMMY ROSSER, on the orders of defendant GARY

SARTOR, attempted to kill V.P. by shooting him multiple times on the belief that V.P. had disrespected GARY SARTOR by threatening him over a dispute about drugs and money.  [Doc. 33 at 20.]

9. On or about February 15, 2016, defendants GORDON EVANS, PATRICK CAPLE, GARY SARTOR, and TYRONE CLARK participated in a gang meeting via conference call.  During the call EVANS told the gang's leaders that they "are responsible for the actions of the others underneath you."  [Doc. 33 at 20.]

11. In or about the Spring of 2016, defendants PATRICK CAPLE, GARY SARTOR, and GORDON EVANS ordered fellow NTG member J.L. to murder the family of D.M. on the belief that D.M. was cooperating with law enforcement regarding Jeffrey Anderson's murder.  [Doc. 33 at 21.]

21. On August 13, 2016, CETERA BOWLES-GRIFFIN purchased a kilogram of methamphetamine on behalf of GARY SARTOR for $10,500.  [Doc. 33 at 22.]

23. On or about August 13 and August 14, 2016, defendants GARY SARTOR and KHAJAVIUS MITCHELL threatened to kill gang member T.O. for failing to pay for the marijuana that MITCHELL sold to T.O.  [Doc. 33 at 23.]

32. On or about August 26, 2016, defendants PATRICK CAPLE and GARY SARTOR possessed Xanax and marijuana for distribution.  [Doc. 33 at 24.]

46. On or about September 9, 2016, defendants GARY SARTOR and KHAJAVIUS MITCHELL arranged to provide Tremaine Garrison, who was incarcerated at the time, with two ounces of marijuana.  Garrison sent Sheena Brown to pick up the marijuana from MITCHELL and deliver it to Garrison.  [Doc. 33 at 26.]

3

54. Beginning on or about September 15, 2016, and continuing through on or about September 17, 2016, defendants KHAJAVIUS MITCHELL and CETERA BOWLES-GRIFFIN picked up over $16,000 from Marcus Russell.  MITCHELL and defendant GARY SARTOR then instructed BOWLES-GRIFFIN to pick up marijuana and methamphetamine from SARTOR's drug suppliers.  BOWLES-GRIFFIN then delivered the drugs to Russell.  [Doc. 33 at 28.]

62. On or about September 18, 2016, Marcus Russell complained in a text message to defendant GARY SARTOR that one of the pounds of marijuana he received from SARTOR was short four ounces.  [Doc. 33 at 29.]

70. On or about September 20, 2016, defendants GARY SARTOR and KHAJAVIUS MITCHELL sold defendant MICHAEL JACKSON two ounces of methamphetamine.  [Doc. 33 at 30.]

74. On or about September 21, 2016, defendant CETERA BOWLES-GRIFFIN texted defendant GARY SARTOR that she had received $500 from defendant MICHAEL JACKSON, an inmate at Dodge State Prison, as payment for methamphetamine that SARTOR was providing JACKSON through BOWLES-GRIFFIN.  [Doc. 33 at 31.]

81. On or about September 22, 2016, defendants KHAJAVIUS MITCHELL and GARY SARTOR, and S.C. discussed the pricing for methamphetamine that S.C. was planning to distribute in NY.  [Doc. 33 at 32.]

84. On or about September 23, 2016, defendant KHAJAVIUS MITCHELL obtained marijuana from his supplier, A.K. for himself, defendant GARY SARTOR, and S.C.  [Doc. 33 at 32.]

91. On or about September 25 and 26, 2016, after the arrest of defendants KHAJAVIUS MITCHELL and RAEKWON WILLIAMS, defendants  GARY  SARTOR,  TYRONE  CLARK,  ALFONZO

4

NALLS, and KIERRA MAHELA collaborated to remove all contraband, including drugs and drug proceeds, from the "Billy Spot," to avoid detection and confiscation of the drugs and money by law enforcement.  [Doc. 33 at 34.]

98.  On or about September 26, 2016, defendant GARY SARTOR ordered the murder of NTG member D.H. by sending a text message to defendant JOSEPH RILEY and other NTG members and associates telling them that D.H. was a "plate," and was "greenlighted" because D.H. deceived a Bloods gang member.  [Doc. 33 at 35.]

99.  On or about September 26, 2016, defendant GARY SARTOR confirmed to defendant TYRONE CLARK that he ordered the murder of D.H.  [Doc. 33 at 35.]

102.  On or about October 1, 2016, defendant TYRONE CLARK, and Cedrick Hill and Erick Balcazar (not defendants in this count) supplied defendants GARY SARTOR and JOSEPH RILEY with methamphetamine for distribution.  [Doc. 33 at 36.]

103.  In or about October 2016, defendants GARY SARTOR and JOSEPH RILEY possessed methamphetamine for distribution. [Doc. 33 at 36.]

113.  On or about and between November 1 through November 3, 2016, defendants GARY SARTOR, MICHAEL JACKSON, an inmate at Dodge State Prison, JOSEPH RILEY, and an associate obtained methamphetamine and marijuana, which they then packaged so that it could be smuggled into Dodge State Prison by corrections officer Fred Arceneaux.  [Doc. 33 at 37.]

114.  On or about November 4, 2016, defendant GARY SARTOR, sent NTG member C.M. to Jessup, GA to pick-up approximately $38,000 from Marcus Russell for the purchase of methamphetamine and marijuana.  [Doc. 33 at 38.]

5

115. On or about November 4, 2016, defendants GARY SARTOR and JOSEPH RILEY supplied Monique Preston with methamphetamine and marijuana on behalf of defendant MICHAEL JACKSON, an inmate at Dodge State Prison. JACKSON had purchased the drugs from SARTOR. Preston and another individual associated with JACKSON then delivered the drugs to Dodge State Prison corrections officer Fred Arceneaux. [Doc. 33 at 38.]

116. On or about November 4, 2016, defendant TYRONE CLARK, and Cedrick Hill and Erick Balcazar provided four kilograms of methamphetamine to defendant JOSEPH RILEY on behalf of defendant GARY SARTOR. [Doc. 33 at 38.]

117. On or about November 4, 2016, defendants JOSEPH RILEY and GARY SARTOR, and Demario Ridley provided Sheena Brown with methamphetamine and marijuana on behalf of Tremaine Garrison who was incarcerated at the time. [Doc. 33 at 38.]

122. On or about November 5, 2016, defendants GARY SARTOR and JOSEPH RILEY, and Travis Todd provided NTG member C.M. with marijuana and methamphetamine for delivery to Marcus Russell. [Doc. 33 at 39.]

123. On or about November 6, 2016, defendants GARY SARTOR and JOSEPH RILEY, and Erick Balcazar and Cedrick Hill provided Monique Preston with methamphetamine, for delivery to Marcus Russell. [Doc. 33 at 39.]

128. On or about November 19, 2016, defendants GARY SARTOR, CETERA BOWLES-GRIFEIN and JOSEPH RILEY, and Linnie Andrews provided Sheena Brown with methamphetamine on behalf of Tremaine Garrison. Brown then attempted to deliver the methamphetamine to Garrison who was in prison at the time. [Doc. 33 at 40.]

129. On or about November 21, 2016, defendant GARY SARTOR had a discussion with Linnie Andrews about the route Sheena Brown was supposed to have taken to deliver methamphetamine, and Andrews assisted SARTOR in looking up whether Andrews had been arrested. [Doc. 33 at 40.]

130. On or about November 25, 2016, defendants GARY SARTOR and JOSEPH RILEY, provided J.J. and Adrian Ansley with methamphetamine for delivery to Marcus Russell. [Doc. 33 at 40.]

The attempted VICAR murder and conspiracy to commit VICAR murder charges in Counts 2 and 3 are based on Sartor's alleged conduct with respect to the attempted murder of V.P., and the VICAR murder conspiracy charge in Count 4 is based on the conspiracy to murder D.M.'s family. [Doc. 33 at 42-44.] Count 8 is a drug possession and distribution conspiracy, and Counts 11, 13, and 15 are substantive counts of possession with intent to distribute controlled substances. [*Id.* at 46-52.]

## II.   MOTION FOR BILL OF PARTICULARS

In his motion for bill of particulars [Doc. 493], Sartor makes numerous requests for additional details about the allegations in the indictment. Federal Rule of Criminal Procedure 7(f) authorizes the Court to direct the government to file a bill of particulars. "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy

7

in the event of a later prosecution for the same offense." *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir.) (quotation omitted), *cert. denied*, 138 S. Ct. 379 (2017).  General discovery is not a valid reason for seeking a bill of particulars, *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981), nor is it "'designed to compel the government to [provide a] detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial,'" *United States v. Roberts*, 174 F. App'x 475, 477 (11th Cir. 2006) (quoting *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980)).  Further, "the defendant [is not] entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection." *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir.), *modified on other grounds by*, 801 F.2d 378 (11th Cir. 1986).  "The defendant bears the burden of showing that the information requested is necessary and that he will be prejudiced without it so as to justify granting a bill of particulars," and as a result, the "mere statement that the defendant will be prejudiced . . . is insufficient." *United States v. Reddy*, No. 1:09-CR-0483-ODE-AJB, 2010 WL 3210842, at *5 (N.D. Ga. Apr. 5, 2010) (citing *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998)), *report and recommendation adopted in pertinent part*, 2010 WL 3211029 (N.D. Ga. Aug. 11,

2010); *see also United States v. Blitch*, No. 5:08-CR-40(HL), 2009 WL 973359, at *5 (M.D. Ga. Apr. 9, 2009) (citing *United States v. Thevis*, 474 F. Supp. 117, 124 (N.D. Ga. 1979)).  The grant or denial of a bill of particulars rests within the sound discretion of the trial court.  *United States v. Draine*, 811 F.2d 1419, 1421 (11th Cir. 1987); *Colson*, 662 F.2d at 1391.

The Court readily concludes that Sartor's motion for a bill of particulars is an impermissible attempt to seek discovery and to force the government to reveal its trial strategy.  Sartor's first request is for additional information about the allegation in Count 1—the RICO conspiracy charge—that participants in the RICO conspiracy engaged in a pattern of racketeering activity involving "multiple threats and acts involving" murder, robbery, and extortion.  Sartor specifically requests the following information:

1) The nature of the alleged threat/action and the substantive criminal offense involved;

2) Which of the alleged co-conspirator(s) specified within the indictment participated in such threat/action;

3) The names of any unindicted co-conspirator(s) who participated in such threat/action;

4) The date of such threat/action and what specific Georgia statute was violated;

9

5) The name(s) of the alleged victim(s)[;]

6) The injuries, if any, sustained by the alleged victim(s)[; and]

7) Sartor's specific alleged role, and manner and level of participation, in such threat/action.

[Doc. 493 at 1-2.]  Sartor requests the same information with respect to the allegations that Sartor and the other participants in the RICO conspiracy engaged in a pattern of racketeering activity involving "multiple acts indictable under" 18 U.S.C. §§ 1512 and 1513, which concern witness tampering and retaliation against witnesses.  [*Id.* at 2-3.]  Further, he requests "the sources providing the protocol and agenda of what allegedly occurred at [NTG] meetings," and, if the source was an individual, the name, address, and contact information for that person.  [*Id.* at 4.]  He asserts that, without a definite written statement of the conduct for which the government contends he responsible, he cannot "figure[e] out just what and how the Government is charging him," and it is not his responsibility to "engage in [an] expedition to try to figure [that] out."  [Doc. 587 at 1-4.]  He also adds in his reply brief that he is unable to determine the basis for the "acts involving murder" used as a predicate for enhanced sentencing.  [*Id.* at 3.]

Upon review, it is implausible that Sartor cannot identify the conduct he is charged with in Count 1 of the superseding indictment.  The superseding indictment

identifies 131 Overt Acts identifying specific acts performed in furtherance of the conspiracy, the dates on which those acts occurred, and the participants and victims involved.  Many of the Overt Acts—which the Court has reproduced verbatim above—clearly set forth Sartor's personal involvement in acts taken in furtherance of the alleged RICO conspiracy.  The superseding indictment also specifically identifies acts involving murder—including the conspiracy to murder V.P., the attempted murder of V.P., and the conspiracy to murder D.M.'s family members— in which Sartor and other Nine Trey Gangsters members allegedly participated.  In addition to the allegations in the indictment, the government has provided Sartor with Rule 16 discovery from which Sartor can determine the date, alleged participants, and alleged victims for each act allegedly done in furtherance of the conspiracy, as well as evidence of Sartor's leadership role within the Nine Trey Gangsters.  [*See* Doc. 545 at 8-9.]  The government also has indicated that it will provide Sartor with notice of uncharged conduct if it intends to elicit evidence about such conduct during its case in chief.   [*Id.*]   Sartor's request for the government to identify the witness or other source it will use to show what happened at gang meetings is merely an impermissible attempt to have the government explain its evidence. *See Roberts*, 174 F. App'x at 477.  Based on the

11

factual detail in the indictment and the government's representations about the information it has disclosed through Rule 16 discovery, Sartor is not entitled to a bill of particulars on Count 1. *See United States v. Sadiki-Yisrael,* No. 1:16-CR145-TWT-JKL-3, 2018 WL 5091632, at *4 (N.D. Ga. Jan. 18, 2018) (denying motion for bill of particulars seeking, *inter alia*, specific information regarding predicate acts in RICO conspiracy charge), *report and recommendation adopted*, 2018 WL 5083882 (N.D. Ga. Oct. 18, 2018).

Sartor also requests additional information about Overt Act 9. [Doc. 493 at 3.] Overt Act 9 describes Sartor's alleged participation in a gang meeting by conference call, in which Defendant Evans allegedly told Sartor and others—described as "the gang's leaders"—that they were "responsible for the actions of the others underneath" them. [Doc. 33 at 20.] Sartor requests that the government "[i]dentify the source(s) providing the basis for the statement that the cited individuals were responsible for the actions of supposed subordinates or underlings." [Doc. 493 at 3.] He also requests the government to identify the "purpose behind the supported calls," state whether the call was made in connection with a criminally significant plan, provide the basis behind the assertion that the participants (especially Sartor) were gang leaders, identify Sartor's specific alleged

leadership position, and provide any indications that Sartor had "actual decision-making authority" within the gang.  [*Id.*]  In its response, the government argues that Sartor's request is an impermissible attempt to compel the government to provide a detailed explanation of the evidence on which it intends to rely at trial but refers Sartor to specific wiretapped phone conversations and other documents produced in discovery.  [Doc. 545 at 9.]

Sartor's request for additional information about Overt Act 9 is due to be denied because, as with his broader request for information about Count 1, the request is an impermissible attempt to force the government to give a detailed exposition of its evidence, the superseding indictment is clear about the charges against him, and the government has provided him the information he has requested in discovery.  In addition, his request is unsuitable for a bill of particulars because overt acts are not elements of a RICO conspiracy.  *See Salinas v. United States*, 522 U.S. 52, 64 (1997) ("The RICO conspiracy statute, § 1962(d), broadened conspiracy coverage by omitting the requirement of an overt act . . . ."); *see also United States v. Henley*, No. 1:16-cr-151-LMM-JFK, 2017 WL 2952821, at *16 (N.D. Ga. May 19, 2017) (denying motion for bill of particulars seeking details concerning overt acts taken in furtherance of extortion and drug conspiracies),

*report and recommendation adopted*, 2017 WL 2918954 (N.D. Ga. July 7, 2017); *United States v. Goldenshtein*, No. 1:10-cr-323-TCB-RGV, 2011 WL 1321573, at *13 (N.D. Ga. Feb. 22, 2011) (noting, in a drug conspiracy case, that "[a] bill of particulars cannot be used to ferret out additional overt acts not listed in the indictment, as long as the indictment alleges the required number of overt acts under the statute being charged"), *report and recommendation adopted*, 2011 WL 1257147 (N.D. Ga. Apr. 1, 2011); *United States v. Leiva-Portillo*, No. 1:06-CR-350-WSD, 2007 WL 1706351, at *15 (N.D. Ga. June 12, 2007) ("Case law is also clear that the Government is not required to identify . . . specific acts or overt acts done in furtherance of a charged conspiracy by particular defendants."), *report and recommendation adopted*, *id.* at *1.

Sartor's remaining requests are for additional information about the VICAR attempted murder and murder conspiracy charges in Counts 2 through 4.  As to Count 2—the attempted VICAR murder of V.P.—Sartor requests the following information:

1) The manner in which the attempted murder of V.P. was commissioned, and how it fell short of the alleged goal;

2) Sartor's alleged direct role in the attempted murder, if any;

14

3) If Sartor was not directly involved in the attempted murder, just how he aided and abetted the attempted commission;

4) Sartor's decision-making or directorial role in planning or carrying out the alleged attempt; and

5) How the alleged murder attempt facilitated or promoted Sartor's maintaining or increasing his stature within the alleged NTG.

[Doc. 493 at 4-5.]  As to Count 3, Sartor requests that the government state the manner in which Sartor and others made the purported agreement to murder V.P. and the specific agreement that they reached.  [*Id.* at 5.]  Finally, regarding the VICAR murder conspiracy charged in Count 4, Sartor seeks information about the manner in which Sartor and others allegedly agreed to murder D.M.'s family, how conspiring to commit the murder facilitated or promoted Sartor's maintaining or increasing his stature within the NTG, and whether any overt or substantial steps were taken in furtherance of the purported agreement to murder D.M.'s family.  [*Id.* at 5-6.]  For these requests, the government informs Sartor of its theory of how the Nine Trey Gangsters members allegedly tried to kill V.P. and the steps taken to kill D.M.'s family, and it points him to the evidence it intends to use at trial to prove those charges.  [Doc. 545 at 10-11.]

As with his requests for additional information about Count 1, Sartor has failed to carry his burden to demonstrate that additional details about Counts 2

15

through 4 are necessary to enable him to prepare his defense, avoid surprise, or plead double jeopardy in a subsequent proceeding.  The superseding indictment clearly sets forth the offenses with which he is charged, and the government has explained to Sartor how it intends to prove those charges and directed him to material disclosed in discovery that will assist him in preparing his defense. Sartor's request is an attempt to force the government to walk him through the evidence it will put forth at trial and is therefore not the proper subject of a bill of particulars.

In sum, the superseding indictment provides Sartor with enough information to allow him to prepare his defenses, minimize surprise at trial, and enable him to plead double jeopardy if later prosecuted for the same offense.  Accordingly, the motion for a bill of particulars [Doc. 493] is **DENIED**.

## III. MOTION FOR FULL DISCLOSURE OF COOPERATING SOURCES AND MOTION FOR GOVERNMENTAL DISCLOSURE OF ANY DEALS, PROMISES, OR INDUCEMENTS INVOLVING ANY COOPERATING SOURCE

Sartor has filed a Motion for Full Disclosure of Cooperating Sources [Doc. 511] and a Motion for Governmental Disclosure of Any Deals, Promises, or Inducements Involving Any Cooperating Source [Doc. 518].  In his motion for disclosure of confidential sources, he argues that the government is relying on

16

confidential sources to establish that he committed at least the following four acts: 1) that he ordered fellow gang members to murder V.P.; 2) that he and others ordered a gang member to murder the family of D.M.; 3) that he and another gang member threatened to kill T.O. for failing to pay for drugs; and 4) that he ordered the murder of D.H.  [Doc. 511 at 2-3.]  Sartor argues that the confidential sources are "high up in the so-called NTG with decision-making authority," which, he argues, gives rise to a presumption in favor of disclosure.  [*Id.* at 5-6.]  Alternatively, he requests that the Court conduct an in camera review of a list of the confidential sources that explains each source's involvement in and knowledge of the conduct alleged in the indictment.  [*Id.* at 6-7.]

In his motion for disclosure of deals with cooperating sources, Sartor seeks the following information:

1) The name and address of each cooperating sources whose statements relate to the investigation in this case, and any statements made by such sources that incriminate Sartor;

2) Immunity deals or other promises or inducements made to cooperating sources; and

3) Government records relating to information disclosed by confidential sources.

[Doc. 518.]

The government responds that it intends to call its confidential informants and sources as witnesses at trial and therefore is not required to disclose the identity of its informants and related information prior to trial because the concerns at issue in *Roviaro*[1] are not applicable where the confidential informant will testify at trial. [Doc. 546 at 3-5.]  Further, considering the *Roviaro* factors, Sartor has not met his burden of showing that the informants' testimonies will significantly aid in establishing his defense, as the confidential informants and sources are "cooperating witnesses" who will testify at trial and who did not work as government agents during the investigative phase of the case.  [*Id.* at 7-8.]  The government also points out that there is a substantial risk of harm to confidential informants if their identities are prematurely disclosed.  [*Id.* at 6.]  The government further argues that Sartor's requests for information about deals and other inducements made with its confidential informants are *Giglio*[2] material, which the government plans to release when it releases Jencks Act[3] material, approximately 14 days before the witness testifies at trial.  [*Id.* at 6, 9.]

---

[1] *Roviaro v. United States*, 353 U.S. 53, 59 (1957).

[2] *Giglio v. United States*, 405 U.S. 150 (1972).

[3] 18 U.S.C. § 3500.

18

In his reply brief, Sartor argues that the government "seeks to do an end run around *Roviaro*" and that the Court should not only apply *Roviaro* but must "presume that the Defendant met his burden of showing the need for disclosure" because the government's confidential informants are likely Nine Trey Gangsters members. [Doc. 588 at 2-3.[4]] Sartor further argues that no binding Eleventh Circuit authority indicates that *Roviaro* does not apply to cases where the government will call the confidential informant at trial. [*Id.* at 4-5.] Citing *United States v. Hailey*, 1:15-cr-332-ELR-LTW, 2016 WL 11440138 (N.D. Ga. Oct. 24, 2016), Sartor also asserts that the government has disregarded "persuasive, on-point authority" supporting his contention that the analysis does not turn on whether the witness will testify at trial but, rather, the informant's role in the criminal enterprise. [*Id.* at 5-6.] As to his motion for disclosure of deals with cooperating sources, Sartor argues that the "prompt" disclosure of *Brady/Giglio* material (*i.e.*, within the next 60 to 90 days) is necessary to give him time to investigate the backgrounds of the

---

[4] Citations to specific pages in Sartor's reply brief [Doc. 588] refer to the page numbers automatically generated by CM/ECF.

government's witnesses, to obtain impeachment material, and to make an informed decision on considering any plea offers the government may make.[5]  [*Id.* at 8-10.]

It is well-established that the government has a limited privilege to withhold the identity of law enforcement informants.  *Roviaro*, 353 U.S. at 59; *United States v. Flores*, 572 F.3d 1254, 1265 (11th Cir. 2009).  The purpose of this privilege "is the furtherance and protection of the public interest in effective law enforcement."  *Roviaro*, 353 U.S. at 59.  But where the disclosure of an informant's identity or the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the trial court may require disclosure.  *Flores*, 572 F.3d at 1265.  In balancing these interests, the Court must account for "the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony."  *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991).  Courts in this Circuit consider the following three factors in evaluating whether the government should be required to reveal the identity of informants: "(1) 'the extent of the CI's participation in the criminal activity'; (2) 'the directness of the relationship between

---

[5] To the extent that any *Brady* material exists, the government has noted that it understands its obligation to disclose any *Brady* material [Doc. 546 at 6].  *See Brady v. Maryland*, 373 U.S. 83 (1963).

the defendant's asserted defense and the probable testimony of the informant'; and (3) 'the government's interest in nondisclosure.'" *Flores*, 572 F.3d at 1265 (quoting *United States v. Tenorio-Angel*, 756 F.2d 1505, 1509 (11th Cir. 1985)).

The concerns in *Roviaro* are generally inapplicable where the government intends to call the informant as a witness at trial. *See Banks v. Dretke*, 540 U.S. 668, 697 (2004) (noting that the issue of evidentiary law in *Roviaro* was whether (or when) the Government is obliged to reveal the identity of an undercover informer the Government does *not* call as a trial witness"). Thus, courts repeatedly have declined to order disclosure of the identities of confidential informants where the informants will testify at trial. *United States v. Rook*, No. 1:15-CR-380-SCJ, 2016 WL 2344877, at *3 (N.D. Ga. May 3, 2016); *United States v. Pineda*, No. 1:11-CR-006-CAP-JFK, 2012 WL 2906758, at *44 (N.D. Ga. June 4, 2012) ("Neither the Federal Rules of Criminal Procedure, *Brady*, the *Jencks* Act, or *Giglio* require the disclosure of information related to a testifying witness any earlier than the Government has offered to make disclosure in this case."), *report and recommendation adopted*, 2012 WL 2907447 (N.D. Ga. July 16, 2012); *United States v. Elder*, No. 1:10-CR-132-RWS-AJB, 2010 WL 5656687, at *6 (N.D. Ga. Dec. 16, 2010) (explaining that "the concerns in *Roviaro* are not directly

21

applicable" where the government informs the court that the confidential informant will testify at trial), *report and recommendation adopted in pertinent part*, 2011 WL 294507 (N.D. Ga. Jan. 27, 2011); *United States v. Mendoza*, No. 1:05-CR-380-RWS-ECS, 2005 WL 8159713, at *1 (N.D. Ga. Sept. 9, 2005) ("[A]s the Government intends to call these informants at Defendant's trial, it is not required to disclose the identities of the informants at this time.").

The Court is persuaded by the numerous cases, cited above, determining that the concerns of *Roviaro* are not in issue when the government will call its confidential informants as trial witnesses. Sartor's reliance on *Hailey* in support of his argument to the contrary is misplaced. In *Hailey*, the court determined that an in camera hearing was necessary to determine whether the government should be compelled to disclose the identity of a confidential informant. 2016 WL 11440138, at *9-10. *Hailey* is distinguishable because, in that case, the government had not yet decided whether it would call its confidential sources as trial witnesses. *Id.* at *9. Sartor argues that *Hailey* should not be distinguished for that reason because, in deciding to hold a hearing, the court in *Hailey* did not expressly rely on the fact that the government had not decided whether to call the confidential source as a witness. [Doc. 588 at 6 n.3.] But the reason that the court in *Hailey* was required

22

to undertake the *Roviaro* analysis was that that the confidential informant possibly would not be called as a witness.  Indeed, the court noted, "To the extent that the Government wishes to have the confidential informant testify at trial, the Court will revisit the need for a hearing."  *Id.* at *10.

Here, the government has indicated that it intends to call its confidential informants as witnesses during the trial and will disclose prior to trial the identity of the informant and any related Jencks and *Giglio* materials.  [Doc. 546.]  In light of this representation, the Court will not require the government to disclose the identity of the confidential informant at this time.  The Court additionally concludes that the government has established a valid interest in preventing premature disclosure of its confidential informants' identities, namely, the danger posed to those informants if their names were disclosed.  [*See id.* at 6.]  The superseding indictment contains allegations that alleged Nine Trey Gangsters members— including Sartor—ordered the murder of the family of a person who was suspected of cooperating with law enforcement.

Finally, as to Sartor's requests for information about deals the government made with cooperating sources, a defendant does not generally have a right to early disclosure of impeaching information.  *Pineda*, 2012 WL 2906758, at *44.  The

23

government's agreement here to abide by its *Brady* obligations and its assertion that it will provide Jencks material and *Giglio* material about two weeks before each witness testifies are sufficient.   *See id.*   Additionally, the Court's pretrial scheduling order directs the government to produce provide all materials and information in compliance with its obligations under *Giglio*.  [Doc. 240 at 6.]  The scheduling order further provides that a party can request a modification of this standard ruling by filing a particularized motion for relief.  [*Id.* at 5.]  Although Sartor is specific about the type of information he is seeking, his general assertions about the need to evaluate plea deals "that may arise" and to investigate the government's witnesses do not persuade the Court that early disclosure is required here.  [*See* Doc. 588 at 9.]

Based on the foregoing, Sartor's Motion for Full Disclosure of Cooperating Sources [Doc. 511] and Motion for Governmental Disclosure of Any Deals, Promises, or Inducements Involving Any Cooperating Source [Doc. 518] are **DENIED**.

## IV.   MOTION TO SUPPRESS EVIDENCE OBTAINED BY THE GOVERNMENT FROM SOCIAL MEDIA ACCOUNTS

Sartor moves to suppress all evidence that the government obtained from his social media accounts (including Facebook and Instagram) on the grounds that the

search warrant for the information was based on communications intercepted pursuant to court-authorized wiretaps. [Doc. 582.]  Sartor argues that because the wiretaps were "invalid," the search of his social media accounts should be suppressed as fruit of the poisonous tree.  [*Id.* at 2.]  In the alternative, Sartor generally moves to exclude the evidence under Federal Rule of Evidence 403 because "[t]he prejudicial import of the overwhelming majority of content of these accounts clearly exceeds the probative value, and creates a danger of unfair prejudice."  [*Id.* at 2-3.]

Sartor's motion to suppress is due to be denied because this Court has recommended denial of Sartor's motion to suppress wiretap evidence.  [*See* Doc. 1034.]  Accordingly, there is no fruit of the poisonous tree problem that would justify suppression of the social media information at issue in Sartor's motion.  As for his request to exclude evidence under Rule 403, such a request is premature and should instead be made at or near trial either as a motion in limine or as an objection. Accordingly, it is **RECOMMENDED** that Sartor's Motion to Suppress Evidence Obtained by the Government from Social Media Accounts be **DENIED**.  [Doc. 582.]  It is also noted that Sartor previously filed a Preliminary Motion to Suppress Evidence Obtained by the Government Through the Stored Communications Act

25

[Doc. 510], which he substituted with his motion to suppress evidence obtained from social media accounts [*see* Doc. 582 at 1-2].  Thus, his previous motion to suppress is **DEEMED WITHDRAWN**.  [Doc. 510.]

## V.    CONCLUSION

For the foregoing reasons, Sartor's Motion for Bill of Particulars [Doc. 493], Motion for Full Disclosure of Cooperating Sources [Doc. 511], and Motion for Governmental Disclosure of Any Deals, Promises, or Inducements Involving Any Cooperating Source [Doc. 518] are **DENIED**.  His Motion to Suppress Evidence Obtained by the Government Through the Stored Communications Act [Doc. 510] is **DEEMED WITHDRAWN**.

Further, it is **RECOMMENDED** that the Motion to Suppress Evidence Obtained by the Government from Social Media Accounts [Doc. 582] be **DENIED**.

I have now addressed all referred pretrial matters relating to Defendant Sartor and have not been advised of any impediments to the scheduling of a trial.

Accordingly, this case is **CERTIFIED READY FOR TRIAL** as to this defendant.[6]

IT IS SO ORDERED AND RECOMMENDED this 9th day of August, 2019.

_____
JOHN K. LARKINS III
United States Magistrate Judge

---

[6] Since matters pertaining to Sartor's codefendants still are pending, the District Court is not required to place his case on the trial calendar at this time.  18 U.S.C. § 3161(h)(6).